Filed 12/22/14  P. v. Lopez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B252103 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA086456) |
| v. | |
| HERMAN LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Scott T. Millington, Judge.  Affirmed.

California Appellate Project, Jonathan B. Steiner, Executive Director, Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Herman Lopez of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b))[1] (count 1) and making criminal threats (§ 422, subd. (a)) (count 2).[2] With respect to both counts, the jury found that defendant personally used a firearm within the meaning of section 12022.5, subdivision (a). Defendant admitted having suffered six prior convictions for which he served prison terms within the meaning of section 667.5, subdivision (b).

In count 1, the trial court sentenced defendant to the midterm of six years on the substantive offense, four years for the firearm enhancement, and five years for five of the prior prison terms for a total sentence of 15 years in that count.[3] In count 2, the court imposed a concurrent sentence of two years (the midterm) for the substantive offense and four years for the firearm enhancement for a total sentence of six years in that count.

Defendant appeals on the ground that the trial court erred when it failed to stay execution of sentence in count 2 pursuant to section 654.

## FACTS

Carlos Deleon was staying at a motel in Inglewood when, at 4:00 a.m., he heard someone hitting a door very hard and the sound of a breaking window. He opened his door and saw defendant standing outside the room next door holding a gun. Defendant was screaming, "Get out motherfucker, get out." Frightened, Deleon closed his door and unsuccessfully tried to call 911. He heard a soft knock at his door and assumed it was Mike, his next-door neighbor, calling at his door to ask for help. Instead, defendant stood there and said to Deleon in Spanish, "You are going to die today, whore." Defendant had the gun "on his hands" and was raising it up. Defendant raised the gun to the level of

---

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

[2]     Defendant was jointly charged with Alan Ruiz Martinez, whose trial was severed from defendant's. Martinez is not a party to this appeal.

[3]     The court found that two of the prior prison terms had been served concurrently, and therefore only five prior prison terms could be used to enhance defendant's sentence.

2

Deleon's chest and face. Deleon was able to grab the gun, and he and defendant began struggling for it. Mike was also present, and defendant told Mike, "Grab him, put him in the room so I can kill him." Mike pulled Deleon's arm. When Deleon began screaming for help, Mike let Deleon go and walked away, leaving defendant and Deleon struggling. Deleon kept pushing defendant back until they reached the stairs. Deleon pushed defendant down the stairs and ran the other way. He then saw defendant walking away.

Deleon told arriving police officers that someone had tried to kill him, and he indicated the direction in which defendant had gone. Police found defendant in a motel across the street, and Deleon identified him in a field showup.

## DISCUSSION

### I. Defendant's Argument

Defendant contends the assault and the threat occurred in a single course of conduct in which he pointed a gun at Deleon while simultaneously issuing a threat, and he verbally connected the threat to the gun. According to defendant, it is clear that he committed the assault with a firearm to assist in the commission of the section 422 violation, causing the victim to be in fear for his safety. Therefore, his sentence in count 2 for the criminal threats count should be stayed under section 654.

### II. Relevant Authority

Section 654 provides that an act or omission punishable in different ways by different provisions cannot be punished under more than one such provision. (§ 654.) When section 654 applies, the proper procedure is to stay imposition of sentence on one of the crimes, with the stay to become permanent on completion of the term imposed on the other. (*People v. Pearson* (1986) 42 Cal.3d 351, 360; *People v. Pena* (1992) 7 Cal.App.4th 1294, 1312.)

The defendant may be found to have harbored a single intent if the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, resulting in the defendant being punished only once. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may

3

be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*Ibid*.)  On appeal, the court "must 'view the evidence 'in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]' [Citation.]" (*People v. McGuire* (1993) 14 Cal.App.4th 687, 698.)

Making criminal threats is a specific intent crime that occurs when the defendant "willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out . . . ." (§ 422.)  Section 422 was enacted to punish those who try to instill fear in others.  (*People v. Felix* (2001) 92 Cal.App.4th 905, 913.)  Section 422 may be violated by a threat indirectly communicated to the threatened person.  (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659.)  The intent required by section 422 is not the intent to actually carry out the threatened crime, but the intent that the victim receive and understand the threat.  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 806.)  The circumstances under which the threat is made give meaning to the words used, and "threats are judged in their context."  (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137.)

An assault with a firearm occurs when a defendant willfully performs an act with a firearm with the present ability to apply force with it.  (§ 240.)  An "assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another."  (*People v. Williams* (2001) 26 Cal.4th 779, 790.)

## III.  Section 654 Not Applicable

Whether a sentence should be stayed under section 654 is a question of fact for the trial court, which is vested with broad discretion.  We must affirm if there is substantial evidence to support the trial court's order.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)  Where, as in the instant case, the trial court made no express findings on the multiple punishment issue, we examine whether substantial evidence supports its

implied findings.  (*People v. Islas* (2012) 210 Cal.App.4th 116, 129; *People v. Nelson* (1989) 211 Cal.App.3d 634, 638.)

We believe that defendant's acts revealed two objectives.  In assaulting Deleon with a firearm, defendant clearly displayed the objective of harming or killing Deleon.  In threatening Deleon, the objective was to instill fear in him.  The assault was not merely a means of bolstering the criminal threat.  The trial court reasonably determined that defendant went beyond the criminal objective of instilling fear and had the further criminal objective to do an act that, by its nature, would probably and directly result in the application of force to Deleon.  In other words, defendant willfully intended to do an act that exposed Deleon to an objective risk of injury, and when acting, he was objectively aware of facts that would result in the application of force.  (See CALCRIM No. 875.)  Therefore, even if one criminal objective of the assault with a firearm was to assist the commission of a violation of section 422, defendant had an additional, independent criminal objective in committing the assault with a firearm.  Since section 654 prohibits multiple punishment for offenses only when the defendant had the same intent and objective for all of the offenses, defendant's punishment for assault with a firearm and criminal threats did not violate section 654.

Moreover, even if, as defendant contends, the initial threat ("You are going to die today") formed part of the same course of conduct and indicated that defendant's sole intent was to put Deleon in fear for his life based on his present ability to shoot and possibly kill him, the second threat was clearly motivated by a separate intent and objective.  Deleon grabbed defendant's gun after he was assaulted, and a struggle commenced between the two men.  For all practical purposes, the assault was over at that point.  Defendant, however, in addition to struggling for the firearm, made a threat to Deleon by means of his order to Mike, i.e., he told Mike to grab defendant and put him in the room so that defendant could kill Deleon.  Defendant clearly wished to put Deleon in fear for his life again and make him desist from struggling with the gun, which was a danger to defendant at that point.  It cannot be said that the assault with a firearm was incidental to the second threat or a means to accomplish it, since the struggle for the

5

firearm was not an act initiated by defendant. In sum, even if the assault with a firearm was intended merely to bolster the first threat to Deleon, the assault was over when the second threat was made with an independent objective of causing Deleon to believe he was engaged in a two-against-one battle he could not possibly win.

Although defendant argues that the second threat was too close in time to the first to be considered separately, the length of time a defendant has a specific objective may be interpreted to find "separate, although sometimes simultaneous, objectives under the facts," thus permitting multiple punishment. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1212; see, e.g., *People v. Harrison* (1989) 48 Cal.3d 321, 336-338 [§ 654 does not preclude punishment for each of multiple sexual offenses against same victim during a six- or seven-minute attack, committed to achieve separate sexual gratification]; *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [each of three successive shots at the same person was a volitional act and a "separate intent to do violence"].) Because the additional threat against Deleon increased defendant's culpability, it was appropriate to impose separate punishment in count 2. (*People v. Harrison*, at p. 335.) This is not inconsistent with the prosecutor's closing argument, where he referred to the two separate threats against Deleon.

Accordingly, the record supports the court's implicit finding that count 2 was not based, or not solely based, on the same intent and objective as the offense committed in count 1. There was no error in sentencing.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.          HOFFSTADT, J.

6